IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

      Plaintiff,

v.                                   CR 15-0618 MCA

MIRANDA RENTZ,

      Defendant.


## MEMORANDUM OPINION AND ORDER OF DETENTION

THIS MATTER came before the Court on the Government's Motion to Detain the

defendant pending trial.  The Court held an evidentiary hearing on March 13, 2015, and

has reviewed the report of James Harrington, Ph.D. and the exhibits offered at the

hearing, including listening to Exhibit 2 (the January 19 recorded hospital interview of

Defendant Rentz) at the request of Defendant's counsel.  The Court finds that by clear

and convincing evidence, the defendant poses a danger to herself and the community.

The Court further finds that there are no combination of conditions for her release that

will adequately address this concern.  She will be remanded to the custody of the United

States Marshal until the conclusion of her trial.

On January 17, 2015, the defendant drove her vehicle into the opposite lane of

travel on a two-lane road located in Indian Country.  Ms. Renz is a Native American, as

were the two occupants of the car with which she collided (John and Jane Doe).  John

Doe died at the scene of the head-on collision; Jane Doe suffered serious bodily

injuries.  The indictment in this matter charges Ms. Rentz with involuntary manslaughter,

assault resulting in serious bodily injury and driving under the influence of intoxicating

liquor.

The defendant was also seriously injured in the collision and is currently confined

to a wheelchair and unable to feed herself.  She has also been diagnosed with and

receives treatment for a variety of pre-existing conditions including pancreatitis,

depression, nausea and shortness of breath and is on numerous medications, including

those to address pain issues.  Some concerns were raised at the detention hearing

prompting me to order a forensic evaluation by a psychologist to assess whether

Defendant suffers from a mental disease or disorder and whether she presents a

danger to herself or others if released from custody until the time of her trial.

Dr. Harrington met with Defendant for several hours, spoke to her husband

Clarence for a half hour, and performed certain psychological tests.  Dr. Harrington

ultimately concluded, based upon his testing and the information provided to him by

Defendant and her husband, that Defendant should be released to her family or to La

Posada Halfway House in Albuquerque, which he felt provided her with a better

opportunity to receive the medical and mental health care he feels she needs.

At the evidentiary hearing, the Government called Jefferson Joe, a criminal

investigator with the Navajo Nation.  Investigator Joe testified that shortly after the

collision, Defendant's blood alcohol level tested at a 0.22, over three times the 0.08

level that raises a legal presumption under New Mexico law of being under the influence

of intoxicating liquor.  *See* NMSA §66-8-10(C)(1).  Additionally, Investigator Joe

revealed the following information, some of which came from a recorded interview with

Ms. Rentz taken two days after the collision (Exh. 2), to which Dr. Harrington had not been privy:

- In addition to "sipping Smirnoff" vodka the morning of the accident, Defendant had taken prescription medicines for depression and Tramadol for pain even though she was aware that the medication labels warned against consuming alcohol when taking those medications.

- Although Defendant first said that she "never drinks," she corrected that statement indicating she might drink on special occasions and that the collision occurred on her wedding anniversary.

- Defendant was "so mad" (Exh. 2) and upset that she had decided to leave that afternoon for Hatch to visit her grandmother. She left just as her husband and son were arriving home. She missed the turn at the junction of the road and temporarily got stuck on the berm.

- At 6:10 p.m., Defendant placed a telephone call to her husband who put the call on speaker so that their son could hear the conversation.  Defendant was crying, and she told her husband that she loved him and that she was taking off her seatbelt and "whatever happens, happens."

- The Collision was reported eight minutes later and had happened just 4-5 miles from Defendant's home.

- The vehicle's black box revealed that Defendant was going 75 miles per hour in a 55 mile per hour zone.  It also established that on a scale of 100, at which a score of 100 represents the accelerator fully depressed to the floorboard, Defendant's car registered 97 at the time of impact.  Defendant was not wearing her seatbelt, and there were no skid marks.

- Sterling Benally of the accident response team helped to extract her from the vehicle.  He reported that Defendant was found alert and conscious in her vehicle, and that Defendant told the rescue team "not to help her" and to leave her alone because her family did not love her any more.

- At the hospital, Defendant denied to Officer Johnson at the hospital that she had been drinking the day of the accident,

3

but later admitted consuming alcohol when confronted with the blood alcohol test results.

- Defendant's medical records indicate a history of depression, narcotic dependence and an apparently unintentional narcotic overdose in her past.

- In an interview of Defendant's husband at the crash scene, he indicated that she sometimes drinks alcoholic beverages without his knowledge.

- In a digitally-recorded interview of Defendant taken two days after the collision, Defendant stated that she was upset the day of the crash which was her wedding anniversary. She was mad that "after being married for so many years, last year he cheated on me." She further stated that "if he was faithful to me, I don't think this would have happened." Exh. 2 (clearly audible on recording).

Dr. Harrington also testified at the hearing. It became clear that during his interview with Ms. Rentz, she gave inconsistent information on which he relied in forming his opinion. She "denied that the current incident for which she is charged was a suicide attempt saying the accident occurred near her wedding anniversary and that she was actually in a good mood on the day of the accident." Yet Defendant also "reported a loss of consciousness at the time of the accident with amnesia for periods of time before and after the accident. . . ." Her reported loss of consciousness, however, is belied by the statements of witnesses at the scene. Dr Harrington did note that because Ms. Rentz tends to keep her feelings to herself, this could pose "some risk in that she may be inclined to keep dysphoric thoughts and feelings to herself rather than be open about them."

**ANALYSIS**

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and

unusual punishments inflicted."  On a motion by the government for detention, the Court is required to consider the following factors:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person, including the defendant's character, his physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record of appearance at court proceedings, whether at the time of the current offense the defendant was on probation, parole or other release pending trial, sentencing, appeal or completion of a sentence; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142.

### (1) The nature and circumstances of the offense charged

Here, the offenses of involuntary manslaughter, assault resulting in serious bodily injury and driving under the influence of alcohol clearly constitute serious crimes and resulted in tragic consequences.  Moreover, the above-offered evidence suggests that Defendant intended by her actions to harm herself and others, and this gives the Court substantial concerns for her proposed release into the community

### (2) The weight of the evidence

Defendant has acknowledged consuming vodka and then driving the vehicle, and all of the evidence indicates that she veered into oncoming traffic.  Her blood alcohol level was over three times the legal limit.  Although Defendant told Dr. Harrington that she lost consciousness at the time of the accident, witnesses at the scene report that she was conscious and communicative.  This somewhat diminishes Dr. Harrington's

5

finding that Defendant's reported amnesia as to events just before and after the crash "is a very common feature of any trauma involving loss of consciousness." From the evidence received at the detention hearing, including the statements of Defendant and her husband and son, the weight of the evidence is quite strong.

### (3) The history and characteristics of Ms. Rentz

The Court notes that Defendant still has the strong support of her family and friends, many of whom attended the March 13, 2015 detention hearing. This speaks well as to her character and long-time ties to her community. The fact that Ms. Rentz has no criminal history is a highly relevant factor under section 3142(g)(3). I have no reason to believe that Defendant would flee the jurisdiction or otherwise fail to appear at future court proceedings.

Of great concern is Defendant's current physical and mental condition. As outlined above, she has serious medical conditions in addition to the injuries she suffered in the collision just two months ago. Dr. Harrison advocated placement at the Albuquerque halfway house to permit access to medical and mental health services at UNM to address observed deficits in Defendant's cognitive functioning.

Defendant's history relating to dependence of narcotic pain medications is troubling – especially given her acknowledgment that she knew that they should not be taken with alcohol, but that she did so on the day of the collision. It is also difficult to discern if Defendant has an alcohol abuse problem, in part because she has given inconsistent information: she never drinks (her experiences with her mother's drinking "were so negative that she did not want to drink or have alcohol around her" – Dr. Harrington's report); she drank "just this one time" (Dr. Harrington's testimony); she

6

drinks only on special occasions (Exh.2); and, starting about nine in the morning of the day in question, she only "sipped vodka" directly from the bottle," but didn't drink all of it (Exh. 2).

Although Defendant's husband told the pretrial services officer that she drinks approximately four times a year, he told Investigator Joe that she sometimes drinks without his knowledge, which could indicate a problem with alcohol.  Heavy alcohol consumption is also associated with pancreatitis from which Defendant suffers.  She denies that alcohol is the cause, however, because she has had the disease for so long.

Dr. Harrington's opinion of lack of dangerousness is seriously undermined by (1) his reliance on Defendant's statements about lack of substance and alcohol abuse, and (2) her apparent lack of candor with him as to her mental state ("happy" before the accident and "unconscious" after the accident) on the day of the collision.  Dr. Harrington's repeated expression of concern for making sure Defendant receives the treatment she needs, although an admirable objective, cannot eliminate the Court's obligation to assure the safety of the community as well as the defendant.

**(4) The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.**

Given the information recited above, it appears that Defendant has been less than candid, and perhaps even deceptive, in providing the information necessary to allay the Court's concerns that today she poses the same risk of death to herself and others as she did just two months ago by her conduct that resulted in the collision underlying the charges.  Although the Court, like Dr. Harrison, would like to place Defendant where she stood the opportunity to receive the best treatment for her injuries, the Court is constrained to find that she should remain in custody until the time of trial.

7

**IT IS SO ORDERED.**

UNITED STATES CHIEF MAGISTRATE JUDGE